IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IRMA G. COUTZ, | CASE NO. 3:22–cv–00496–JJH |
| Plaintiff, | DISTRICT JUDGE JEFFREY J. HELMICK |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Defendant. | **REPORT & RECOMMENDATION** |

Plaintiff Irma G. Coutz filed a Complaint against the Commissioner of Social Security seeking judicial review of its decision denying Coutz Disability Insurance Benefits. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). This matter has been referred to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend the District Court affirm the Commissioner's decision.

## Procedural history

In December 2019, Coutz filed an application for Disability Insurance Benefits alleging a disability onset date of March 31, 2017,[1] and claiming that

---

[1]     "Once a finding of disability is made, the ALJ must determine the onset date of the disability." *McClanahan v. Comm's of Soc. Sec.*, 193 F. App'x 422,425 (6th Cir. 2006).

she was disabled due to osteoarthritis, spinal fusion in her neck, hypertension, high cholesterol, anxiety, depression, diabetes, hyperthyroidism, bulging discs in her neck, a herniated lower back, headaches, and restless leg syndrome. Tr. 67. The Commissioner denied Coutz's applications at the initial level and upon reconsideration. Tr. 67–72, 74–78. Coutz requested a hearing before an Administrative Law Judge (ALJ). Tr. 96–97.

In December 2020, ALJ Jennifer Overstreet held a hearing. Coutz and vocational expert Brian Womer testified. Tr. 34–65. In January 2021, ALJ Overstreet issued a written decision finding that Coutz was not disabled. Tr. 15–29. Coutz appealed. Tr. 150–152. The ALJ's decision became final in January 2022, when the Appeals Council declined further review. Tr. 1–3, *see* 20 C.F.R. § 404.981.

Coutz filed this action in August 2022. Doc. 9. She argues that the ALJ violated the "logical bridge doctrine" when considering Coutz's sciatica.

### Factual history[2]

#### 1. *Personal and vocational evidence*

Coutz was born in 1961 and was 56 years old in December 2017 when she was last insured.[3] Tr. 42, 67, 156. Coutz has a GED. Tr. 42. She used to

---

[2]    Coutz's argument is focused on whether the ALJ properly considered Coutz's sciatica. Doc. 9, at 9–12. I have limited my discussion of the evidence accordingly.

[3]    To be entitled to Disability Insurance Benefits, a claimant must be a wage-earner who accumulated sufficient earning credits and became disabled before the end of his or her insured date. *See, e.g.*, 42 U.S.C. § 423(c)(1); *see also*

work as a cleaner at a hospital, a transportation specialist at a rehabilitation facility, a teacher's assistant, and a chiropractic assistant. Tr. 42, 44, 45, 46–47.

   2.  *Medical evidence*[4]

From January 2017 through February 2020, Coutz regularly saw physician, Kevin L. Park, M.D., at Parkview Medical Group in Bryan, Ohio. Tr. 243-596. Dr. Park treated Coutz for various health issues including, but not limited to: a sore throat, cough, jaw pain, internal pelvic pain, neck pain, headaches, pain in her big toe, daytime sleepiness and yawning, swollen glands, foot issues, and diabetes. Tr. 502, 508, 511, 516, 517, 521, 522, 529, 532, 534-535, 545, 550, 557, 572, 576, 580, 585, 593.

A recurring section, labelled "Patient Active Problem List" within Coutz's Parkview records, documents a diagnosis of right-side sciatica, "noted" in March 2016.[5] Tr. 246, 315, 324, 333, 357, 372, 422, 433, 446, 454, 474, 485, 496, 502, 508, 511, 517, 522, 529, 537, 545, 552, 561, 567, 572, 585, 591.

---

*Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Soc. Sec. Disab. Claims Prac. & Proc.* § 5:3 (2nd ed. 2022).

Coutz alleged an onset date of March 31, 2017, so the issue in this case is whether she was disabled from March 31, 2017, through December 31, 2017, the date on which she was last insured.

[4]    The recitation of medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

[5]    This is as opposed to other sections that list a patient's history including past medical, surgical, social, immunization, and family notes.

In January 2017, Tr. 591, Coutz reported pain in her back and asked Dr. Park to make sure it "was not her lungs" since she had recently recovered from the flu. Tr. 591. He confirmed that she had a normal range of motion in her neck and musculoskeletal system. Tr. 594. He refilled a prescription directing Coutz to take a daily dose of paroxetine, also known as Paxil, for her sciatica. Tr. 595

In June 2017, Coutz complained of soreness and pain in her head and neck, so Dr. Park prescribed a course of physical therapy. Tr. 567. Dr. Park also noted that Coutz complained of "vertigo or spinning." *Id.*

In October 2017, Dr. Park noted that Coutz was grieving and depressed, and that the Paxil was no longer effective. Tr. 555. Dr. Park increased Coutz's daily dose. *Id.* In May 2018, Dr. Park refilled Coutz's prescription for Paxil at the higher dose, Tr. 506, though by November 2018, he had returned it to the original dose. Tr. 426.

In early June 2018,[6] Coutz mentioned "pain in her flank areas" to Dr. Park. Tr. 496. Dr. Park noted that Coutz was "tired and has headaches and they are on both sides of her back." Tr. 496. Upon examination, Dr. Park observed that Coutz had "some tenderness of the flanks" and "bilateral flank pain." Tr. 499.

---

[6]  Coutz's June 2018 complaints of lower back and flank pain fall outside of the seven months between March 31, 2017, and December 31, 2017, which are relevant to our discussion.

The following week, Coutz saw Dr. Park and complained of persistent low back pain. Tr. 485. Upon examination, Dr. Park noted tenderness in her lower back that was greater on her right side than her left. Tr. 489. Dr. Park determined Coutz had "acute left-sided low back pain without sciatica" and "back pain from spondylolisthesis."[7] Tr. 490. Dr. Park ordered x-rays of Coutz's lumbar spine. Tr. 483. The x-rays document "mild dextroscoliosis,"[8] mild degenerative disc disease, and anterolisthesis,[9] conditions that had not changed from Coutz's previous round of x-rays. Tr. 483.

In November 2018, Coutz saw Dr. Park and complained of acute neck pain and stiffness accompanied by a throbbing headache, from which she had been suffering for a period of ten days. Tr. 428. Coutz reported experiencing this every six to eight months for the past four to five years. Tr. 428. Upon examination, Dr. Park noted that Coutz had tenderness in her cervical spine and a "slightly limited" range of motion due to the pain and stiffness. Tr. 431. Dr. Park observed that Coutz had "5/5" strength in both of her "great" toes and

---

[7]    Spondylolisthesis is "forward displacement … of one vertebra over another…." Dorland's Illustrated Medical Dictionary 1754 (32nd ed. 2012).

[8]    Dextro- is "a combining form denoting relationship to the right." Dorland's Illustrated Medical Dictionary 505 (32nd ed. 2012).  Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine." *Id.* at 1681.

[9]    Anterolisthesis means "spondylolisthesis." Dorland's Illustrated Medical Dictionary 98 (32nd ed. 2012).

5/5 "adduction" and "abduction" on both sides in her hamstrings, quadriceps, and hip flexors. *Id*.

In November 2019, Coutz saw Stanley E. Rowan, M.D., a colleague of Dr. Park's at Parkview Medical Group, for abdominal and lumbar back pain. Tr. 291. Dr Rowan observed that in addition to Coutz's complaint of lower back pain, her "pain [was] rather severe in her mid-back." *Id*. Coutz was dizzy, nauseous, possibly had a fever, and felt like she could not move her legs. Tr. 291-292. She reported that she had fallen twice and had been experiencing pain under her ribs on the right side for "quite some time." Tr. 291. Coutz's abdomen was distended and she was tender in the upper quadrants of her body on both sides. Tr. 292. Coutz had tenderness in her mid- to lower back and could walk even though "it hurt." *Id*. Dr. Rowan directed Coutz to a local emergency room for additional treatment. Tr. 295.

A few days later, in November 2019, Coutz arrived at Parkview Medical Group for an appointment with physical therapist (PT) Jodi Arnold. Tr. 290. Coutz reported a history of back pain but indicated that this pain had sharply increased 11 days earlier. Tr. 289. Coutz said she had constant pain that reached a "7/10" at worst and radiated down the back of her legs, stopping above her knees. *Id*. She said that this made it difficult for her to transition from one position to another and that she found it particularly challenging to move between a seated position and a supine one. *Id*. PT Arnold developed a treatment plan for Coutz including physical therapy twice a week for a total of

6

10 visits, and goals including a 50% reduction in back pain, improvement in "trunk" range of motion and core strength, and the development of a home exercise plan. Tr. 290.

Five weeks later, in mid-December 2019, Coutz reported pain relief and compliance with her home exercise program. Tr. 273. She reported a more than 50% improvement in her pain. *Id.* Coutz's rehabilitation goals having been met, she was discharged to continue her exercises at home and instructed to attend two additional telemedicine visits. *Id.*

3. *State agency opinions*[10]

In April 2020, Diane Manos, M.D., reviewed Coutz's records to assess her physical residual functional capacity (RFC).[11] Dr. Manos wrote that while Coutz did submit records reflecting "some treatment," the evidence on file was "insufficient" for Dr. Manos to fully assess the severity of Coutz's conditions

---

[10] When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[11] An RFC is an "assessment of" a claimant's ability to work, taking his or his "limitations … into account." *Howard c. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it is the Social Security Agency's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

and their effect on her functioning from March 31, 2017, the alleged disability onset date, to December 31, 2017, the date on which Coutz was last insured. Tr. 69.

In July 2020, Robert Klinger, M.D., reviewed Coutz's records and agreed with Dr. Manos's finding that the evidence was insufficient to assess Coutz's RFC during the relevant time period. Tr. 75.

The ALJ deemed these agency opinions unpersuasive and found that the evidence in the record did support a finding that Coutz had several medically determinable severe impairments, listed below, during the relevant time period. Tr. 26. The ALJ's decision to find the agency opinions unpersuasive is not contested; neither is her finding regarding Coutz's severe impairments.

### 4.  *Hearing testimony*

Coutz was represented by counsel in December 2020, when she testified at the administrative hearing. Tr. 4–8. Coutz had just started working as a cleaner at a local hospital but didn't think she could continue to work there due to her health. Tr. 42. She previously worked as a bus driver for a rehabilitation center, Tr. 44, a driver and teacher's assistant at a school, Tr. 45, and a chiropractic assistant. Tr. 46. As of December 31, 2017, Coutz said she could not work due to diabetes, high blood pressure, a neck condition which required surgery in 2001, and chronic fatigue. Tr. 48–50. Coutz indicated that during the relevant time period, she could lift no more than seven pounds, stand for no longer than 10 to 15 minutes, walk for no longer than 15 minutes, and had

8

difficulty reaching above her head, from one side to the other, and in front of her body. Tr. 49-50. She indicated she was not taking medicine for pain or numbness on or immediately before December 31, 2017. Tr. 50.

Coutz indicated that sciatica pain on her right side was "a weekly thing for a while" which "start[ed] at [her] buttock and [ran] down [her] leg." Tr. 55. Coutz described the pain as "pretty severe" and "an 8 to 9" "on a scale from 1 to 10" "when it was sharp." *Id*. She indicated that it affected her ability to stand, walk, or sit. *Id*. There was no testimony specifying whether these symptoms affected Coutz within the relevant time period.

Then, vocational expert Brian Womer was called to discuss Coutz's past work as a bus driver, a teacher's assistant and driver, and chiropractic assistant. Tr. 59. ALJ Overstreet asked Mr. Womer to determine whether a hypothetical individual with the same age, education, and work experience as Coutz could perform Coutz's past work or any other work if the individual had the limitations assessed in the RFC determination, described below. Tr. 60. Mr. Womer answered that such an individual could perform Coutz's past work as a chiropractic assistant both as it is generally performed in the national economy and as it was actually performed by Coutz. Tr. 60. Coutz's two other past jobs were ruled out due to the nature of driving, which requires constant reaching. *Id*. Mr. Womer also determined that within Coutz's RFC, a hypothetical individual with the same age, education, and work experience as

Coutz could perform entry level unskilled work at a medium level of exertion such as laundry worker, industrial cleaner, and housekeeper.

### The ALJ's decision

The ALJ made the following findings of fact and conclusions of law:

1. Coutz last met the insured status requirements of the Social Security Act on December 31, 2017.

2. Coutz did not engage in substantial gainful activity from her alleged disability onset date, March 31, 2017, through the date that she was last insured, December 31, 2017. 20 CFR 404.1571 *et seq.*

3. Through the date on which Coutz was last insured, she had the following severe impairments: "degenerative disc disease cervical spine status post-fusion surgery in July 2001[;]" sciatica on the right side, migraine headaches, diabetes mellitus type II, essential hypertension, and obesity. 20 CFR 404.1520(c).

4. Through the date on which Coutz was last insured, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525, 404.1526.

5. Through the date on which Coutz was last insured, she had the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) except that she can occasionally reach overhead with the bilateral upper extremities and frequently reach overhead in other directions with her bilateral upper extremities. Coutz cannot climb ladders, ropes, or scaffolds or crawl. She should avoid workplace hazards such as unprotected heights and moving mechanical parts.

6. Through the date on which Coutz was last insured, she was capable of performing past relevant work as a chiropractor assistant as she had actually performed it and as it is generally performed in the national economy. This work did not require Coutz to perform work-related activities that are precluded by her RFC. 20 CFR 404.1565.

      7. Coutz was not under a disability, as defined in the Social Security
         Act, at any time from her alleged disability onset date, March 31,
         2017, through the date that she was last insured, December 31,
         2017. 20 CFR 404.1520(f).

Tr. 15–29.

## Standard for disability

Eligibility for benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

> 1. Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.
>
> 2. Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.
>
> 3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.
>
> 4. What is the claimant's residual functional capacity, and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.
>
> 5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the vocational factors to perform available work in the national economy. *Id.* If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Id.*

### Standard of review

A reviewing court must affirm the Commissioner's conclusions unless it determines that "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)).

A court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence or a preponderance of the evidence

supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "'zone of choice within which'" the Commissioner can act, without fear of court "'interference.'" *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### Discussion

Whatever else one might say about Plaintiff's brief, it is in fact brief. Unfortunately, it is also woefully deficient. Plaintiff's statement of facts tells the reader when she was last insured, her age at her onset date, and the impairments she suffered. Doc. 9, at 8–9. And that's it. This is a social security case, but the facts contain nothing—nothing—about the evidence presented, the hearing testimony, or the ALJ's decision.

The argument section is little better. Plaintiff argues that the ALJ violated what she refers to as the "logical bridge doctrine." After offering boilerplate, Doc. 9, at 7–9, Plaintiff explains that she's been diagnosed with sciatica and quotes her testimony. *Id*. at 9–10. Without citation to the record, she then offers that, "The ALJ found that this 56-year-old woman could perform medium exertional work—work which by regulation required lifting up 50lbs and lifting or carrying 25lbs frequently." *Id*. at 10. After a lengthy

block quote taken from a regulation and an idiosyncratic "Also Cf." citation, Plaintiff provides her substantive analysis.

> In full, this is Plaintiff's substantive analysis:
>
> This means that the ALJ thought that she could lift or carry 25lbs frequently for up to 5 hours and 20 minutes a workday (and sometimes make a 50lb lift) and that she could accomplish all this with her sciatica, without making her sciatica worse, and without possibly permanently damaging her spine and nerves. Such thinking is an absurdity and violates the logical bridge doctrine. The absurdity becomes even more evident when one takes into account how the sciatica also interfered with sitting, standing, and walking and when one takes into account the combined impact of her objectively identified cervical spine issues.
>
> The accurate and logical bridge was not built here. She is disabled.

*Id*. at 11–12.

Coutz's brief amounts to an invitation to the Court to sift through the record to try to learn exactly what Coutz is claiming. But she doesn't give the Court the tools to do that.

Coutz doesn't build an *accurate and logical bridge* as to the evidence she cites and her argument. She lists her diagnoses, but "[t]he mere diagnosis of [a condition] … says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Coutz recites her testimony but doesn't challenge the ALJ's evaluation of her reports of symptoms or discuss the ALJ's decision at all. So she's waived any challenge to it.

Worse, review of the ALJ's decision shows that Coutz's assertion lacks any merit. The ALJ documented her consideration of Coutz's sciatica—cited

14

five times throughout the decision as she explained the RFC—as well as the limitations caused by Coutz's neck issues, which the ALJ also incorporated into the RFC. Tr. 23, 25–26. The ALJ determined that Coutz could perform only medium work with frequent reaching, occasional overhead reaching, no climbing of ladders, ropes, or scaffolds, and must avoid workplace hazards. Tr. 21. The ALJ further acknowledged Coutz's neck limitations when she wrote, "[i]n mid-2017, the claimant developed headaches attributable to her prior cervical spine fusion" and noted that Coutz's "[c]ervicial spine x-rays showed degenerative changes." Tr. 26. Citing Dr. Park's records, the ALJ explained the basis for finding that Coutz could perform a medium level of lifting, carrying, standing, and walking, as Coutz had "normal strength with normal neurological examinations and no weakness during the relevant period." *Id*.

Coutz speculates that she would not have been able to perform medium work during the relevant time period due to her sciatica by providing the definition of medium work without additional support. Doc. 9, at 8. She has not presented any developed argument to support the claim that the ALJ's thinking was "an absurdity." In contrast, the ALJ considered the evidence when noting her findings and supported those findings with substantial evidence.

## Conclusion

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.

Dated: January 4, 2023

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).